

# United States District Court

## Northern District of Illinois, Eastern Division

| | | |
|---|---|---|
| KJ, a minor, by and through his  mother and next friend Leatrice; and Leatrice | ) ) ) | **Civil Action No.** |

15CV8551
JUDGE LEINENWEBER
MAG. JUDGE ROWLAND

**v.**

)

Cook County School District 104, and Troy Whalen and Illinois )
State Board of Education )
)

# FILED

SEP 2 8 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### Plaintiffs Complaint to Appeal Final Order of Impartial Hearing Officer

1) Parent appeals the June 2, 2015, final order entered by an impartial hearing officer in the special education dispute.

2) Parent filed a civil suit in district court in April of 2014, case no. 14-cv-02666.  In November, 2014, Parent filed a due process complaint notice with the Illinois State Board of Education, case no. 2015-0149.

3) The district court appointed an attorney for the Parent exclusively for representation in the federal matter.  Said attorney does not specialize in education law.

4) On January 14, 2015, the Parties participated in a settlement conference in district court under the guidance of Magistrate Maria Valdez.

5) The parties reached a settlement on January 14, 2015.

6) As part of the settlement, Parent agreed to voluntarily withdraw her due process complaint notice.

7) Parent did withdraw her DPCN.

8) Thereafter, Parent attempted to set-aside her voluntary withdrawal. IHO denied parent's request to set aside her withdrawal. Parent filed a new DPCN.

9) In February, 2015, the District filed a DPCN against the Parent.

10) The IHO enjoined the two DPCNs.

11) On June 2, 2015, the IHO granted the District's Motion for Summary Judgment, based upon the settlement agreement dismissing the matter.

12) The Student is 14 and attends a private day school for students with disabilities ages 3 to 21. The Student's IEP includes the following related services: occupational therapy, physical therapy, speech therapy, transportation services and vision itinerant services.

13) It is undisputed that the Student is a person with a disability under state and federal ADA laws.

14) It is undisputed that the Student receives Physical and Occupational therapy within the school environment.

15) The Student has a known diagnosis of cerebral palsy, utilizes a wheelchair and pediatric walker with assistance, and wears leg braces (KFAOs and AFOs). His disabilities interfere with his educational program.

16) The Student has a known visual impairment diagnosed as Cortical Vision Impairment and receives indirect vision services within the school environment.

## Settlement Agreement Fraud

17) The District misrepresented the qualifications of certain IEP members to entice the Parent to withdraw her due process complaint during the January 14, 2015, settlement conference.

18) The settlement agreement was sufficiently tied to the federal matter and not the special education due process matter.

## Hearing Officer Enforcement of Private Settlement Agreements

19) Almost conclusively Hearing Officers have refused to enforce settlement agreements outside of IDEA-relate dispute resolution processes and have viewed such requests for relief as outside the scope of their authority.

20) In support of its motion for summary judgment, the District cites St. Joseph School Dist. V. Missouri Depart. Of Elementary (2010). What the unrepresented Parent understands from this case is that that a hearing officer applied a two-part test: (1) Whether a IDEA settlement agreement exist, and its terms, determines the free and appropriate education a child will receive; and (2) If enforceable, a settlement will constitute full and final resolution of an IDEA claim.

21) Here, relating to part one, the settlement agreement substantially extinguishes the federal matter with only a mention of the Parent withdrawing the due process matter. The agreement is absent of free and appropriate educational terms for the Student.

22) Part two: Said agreement should be unenforceable because of the school District's willful and intentional illegal engagement in fraud.

### Elements of District's Fraud

23) The District materially misrepresented to the Parent the qualification of certain members of the Student's IEP team.

24) The District knew or believed the statements to be false.

25) The Parent relied on the District's material misrepresentation.

26) The District induced the Parent into withdrawing her then-pending due process complaint.

### District Inappropriate Use of Settlement Agreement that Bars Appropriate Services to the Student

27) It is undisputed that the Student utilizes two wheelchairs in his school environment.

28) His primary wheelchair was purchased in 2012.

29) The District arranged for the wheelchair vendor, school therapist and parent to work together to select the appropriate wheelchair system for the Student.

30) The Student's state Medicaid coverage paid for the wheelchair system.

31) The Student's secondary wheelchair was purchased by the District in 2013.

32) Since 2012 and 2013, respectively; the overwhelming majority of wheelchair repairs take place within the school environment.

33) Medicaid does not replace wheelchairs less than five years age. The Parent is not requesting a new wheelchair, just appropriate and normal repair/replacements which is part of a normal cycle for a pediatric wheelchair user.

34) Here, the Student's wheelchairs can be modified to accommodate his current growth needs.

35) Since his primary wheelchair was purchased by Medicaid and the school directed all documentation of this transactions, repairs, growth kits, modifications, etc., must be transacted through his Medicaid coverage. A letter of need for said repairs and modifications must be signed and attached by a licensed physical or occupational therapist.

36) Since the execution of the settlement agreement, the District has refused to supply the letter of need required to make repairs and/or modifications to the Student's current wheelchairs. systems.

37) On September 15, 2015, a wheelchair vendor visited the Student's home to assess his growth in both wheelchairs. He has since requested a letter of need from the licensed therapists working with the Student within his school environment. The vendor reported that the District refuses to supply such documentation.

38) The primary wheelchair is used exclusively at school. The Parent requested the District send it home the day before the wheelchair vendor visited the Student's home.

39) The initial appointment was scheduled for September 11, 2015. The vendor rescheduled the appointed to September 15, 2015.

40) The Parent requested several times for the Student's wheelchairs to be repaired and/or modified within the school environment which requires a letter of need. The District has failed to comply with these requests.

41) The District is attempting to force the Parent to purchase a new wheelchair system for the Student. The Student does not require a new primary wheelchair, because the one he has is about 3 years old. The Student is a pediatric wheelchairs user who requires normal maintenance and replacement parts to accommodate his growth. A letter of need is required to complete said process. The parts and repairs are covered through the Student's Medicaid coverage.

**Violations of laws**

42) The District has violated ADA federal and state regulations by not accommodating the modifications the Student requires to function within the school environment with his required mobility equipment.

43) The District is discriminating against the student based upon his disability.

4

44) The District is violating ADA retaliatory laws against the Parent.

45) The Parent is known to advocate for the Student.

**Relief**

Parent requests the following relief:

46) Damages in the amount of $47,000.
47) A finding that the January 14, 2015, settlement agreement does not extend to the DPCN 2015-0149.
48) A finding that the District violated state and federal ADA laws.
49) A finding that the District violated ADA retaliatory state and federal laws.
50) A finding that the Student's stay-out provision is Elim Christian School in the 8th grade.

PLAINTIFFS RESPECTFULLY DEMAND TRIAL BY JURY.

Respectfully submitted,

Leatrice Gates

7231 W. 63rd Place, Summit, IL 60501

## ILLINOIS STATE BOARD OF EDUCATION
## IMPARTIAL DUE PROCESS HEARING

Student[1],

      Student,

v.

Summit SD 104,

      School District.

Case No: 2015-0149

Janet K. Maxwell-Wickett,
Impartial Hearing Officer

## <u>ORDER OF DISMISSAL</u>

### <u>JURISDICTION</u>

The undersigned has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C §1400 *et seq.* and the Illinois School Code, 105 ILCS 5/14-8.02a *et seq.*

## <u>BACKGROUND</u>

The Student is a 14 year old, male. He qualifies for special education services under the disability categories of multiple disabilities (MD) and speech or language impairment (S/L). The Student currently attends a private therapeutic day school (TDS). The District is the Local Educational Agency (LEA).

Parent filed her original Due Process Complaint Notice (DPCN) on November 21, 2014. The parties advised this hearing officer on January 14th, and during status calls on January 27th and February 11th, that there exists a concurrent case in federal court under Case No. 14 CV 2666 in

---

[1] Personal identification information is provided in Exhibit A.

which Parent is the Plaintiff, District and others are Defendants, and which includes the issues raised in Parent's DPCN, along with other unidentified issues. On January 14, 2015, this hearing officer received an email from District's counsel, with a copy to Parent, indicating that the federal case had been settled and attaching a Settlement Checklist/Term Sheet signed by counsel for both parties. The Settlement Checklist/Term Sheet has been made part of the administrative record in this matter.

The Settlement Checklist/Term Sheet is dated January 14, 2015, signed by counsel for both parties, and states that it is a "binding agreement today." The Settlement Checklist/Term Sheet further provides as follows: "Plaintiff is specifically aware that this agreement includes a release of the current due process claim pending, Case No. 2015-0149, filed with ISBE."

On February 11, 2015, Parent requested an independent educational evaluation for vision itinerant services at District expense based upon the Annual Vision Itinerant Report dated September 29, 2014. The District, on February 16, 2015, timely filed its DPCN requesting a denial of Parent's request for an independent vision itinerant educational evaluation. Parent subsequently filed a Response to the District's DPCN. The issue of consolidation of the DPCNs was reserved.

Parent had maintained up until February 16, 2015, that she did not intend to withdraw her DPCN although the terms of the Settlement Checklist/Term Sheet stated otherwise. However, upon the District's filing of its DPCN on February 16, 2015, the Parent advised that she was withdrawing her complaint as the issues raised had been settled as part of the federal court settlement in Case No. 14 CV 2666. This hearing officer has made three attempts to hold a status conference with the parties to discuss the Parent's request. However, both parties were unavailable to participate. The Parent confirmed her request to withdraw her DPCN to this Hearing Officer

via email on three separate occasions. Based upon the Parent's representations, this hearing officer was satisfied that the Parent intended to voluntarily withdraw her complaint.[2]

The parties disagreed as to whether or not the District's DPCN had been resolved as part of the settlement in federal court. Therefore, the case was continued in order to allow the parties additional time to finalize a written settlement agreement in that matter. On February 24, 2015, Parent filed a new DPCN notice. Subsequently, Parent requested leave to file two Amended DPCNs on February 26, 2015 and March 3, 2015. This Hearing Officer denied Parents requests to file the two Amended DPCNs finding that they were nothing more than the Parent's attempt to resurrect issues previously withdrawn, and which the Parent had stated were settled as part of the federal court settlement agreement.[3] The issue of consolidation of the two outstanding DPCNs, the District's and the Parent's, was reserved. For purposes of judicial economy, this hearing officer hereby consolidates these DPCNs under the ISBE case number above.[4]

On May 18, 2015, the parties advised that a formal written settlement agreement in the federal matter referenced would not materialize. District counsel further advised that the federal court Settlement Checklist/Term Sheet would be enforced pursuant to Judge Valdez's Report and Recommendation and that case was dismissed without prejudice until June 30, 2015, after which the dismissal will become with prejudice without further order of the court.[5]

---

[2] See this Hearing Officer's Order dated February 20, 2015.
[3] See this Hearing Officer's Status Call Order dated March 27, 2015.
[4] The timelines under IDEA regarding the resolution meeting period shall run from the date that the District's DPCN was filed, which was February 16, 2015. Accordingly the resolution meeting period ended on March 18, 2015. The original 45-day deadline was May 3, 2015. This deadline was extended for good cause shown to June 2, 2015 by this Hearing Officer's Order Granting Continuance dated April 26, 2015.
[5] See Minute Order of Hon. Amy J. St. Eve dated April 22, 2015.

3

On that same date, District counsel filed a Motion for Summary Judgment and Sanctions with respect to its DPCN and a Motion to Dismiss Parent's DPCN and for Fees Against Parent. On May 27, 2015, Parent timely filed her Responses to both Motions.

## ISSUES

The issues to be determined are as follows:

**District's Motion for Summary Judgment**

1.  Whether the Vision Itinerant Report dated September 29, 2014 constitutes an "evaluation" as defined in 34 CFR 300.302.

2.  Whether the request for an independent vision itinerant education evaluation is barred by the Settlement Checklist/Term Sheet executed by both parties as part of the settlement in federal court Case No. 14 CV 2666.

3.  Whether the Parent should be sanctioned, via an award to the District of its attorney fees, for filing her request for an independent vision itinerant education evaluation.

**District's Motion to Dismiss**

1.  Whether the Parents DPCN filed February 24, 2015 contains issues which were resolved as part of the Settlement Checklist/Term Sheet entered in the federal matter under Case No. 14 CV 02666 and whether such issues should be dismissed.

2.  Whether the stay put placement, from the operative IEP of September 30, 2015, was violated when the District changed the Student's special education transportation arrangements to a bus that would not allow for the storage of two (2) wheelchairs for the Student.

3.  Whether Parent acted in bad faith by continuing to file DPCNs and Amended DPCNs after the settlement agreement was reached in federal court, and engaged in harassing conduct

4

toward the District causing the District to incur additional, unnecessary litigation costs and entitling it to recover those costs.

## FINDINGS OF FACT

After considering all of the evidence, as well as the arguments of both parties, this Hearing Officer's Findings of Fact are as follows:

1.      The Annual Vision Itinerant Report in a one and one-half page document which contains three sections of information.  The first paragraph of the report is a discussion of the Student's visual diagnosis made by a physician who assessed the Student.  The second paragraph discusses strategies used by the vision itinerant teachers during the current school year as compared with those used during the prior school year and further provides information on the Student's present levels of performance in September 2014.  The third paragraph is a list of eleven (11) suggestions for appropriate instructional strategies for the implementation of the curriculum for the Student. (Annual Vision Itinerant Report dated September 29, 2014.)

2.      The Annual Vision Itinerant Report does not contain any statements determining the Student's eligibility or the extent and nature of the related services the Student needs.  The report does not purport to:  use a variety of assessment tools and strategies; evaluate the Student in all areas of suspected disability; be sufficiently comprehensive to identify all of the Student's special education and related service needs.  Further, it does not consider classroom based observations or State assessment data.  (Annual Vision Itinerant Report dated September 29, 2014.)

3.      The Vision Itinerant Teacher (VIT) is licensed in Illinois as a professional educator.  VIT has an endorsement in teaching blind or visually impaired students and holds a Master's Degree in Orientation and Mobility.  (Affidavit of VIT dated April 21, 2015.)

4.      VIT drafted the Annual Vision Itinerant Report dated September 29, 2014 as the Student's VIT to suggest appropriate instructional strategies for the implementation of the curriculum for the Student. (Affidavit of VIT dated April 21, 2015.)

5.      Parent disagrees with the Vision Itinerant Report dated September 29, 2014. (Parent's Motion in Opposition to District's Motion for Summary Judgment dated May 27, 2015.)

6.      The Student's Transportation Plan, contained in the Student's IEP dated September 30, 2014 provides that the Student "requires a secured wheelchair." The comments to that section state "uses wheelchair unless parent brings to school, then Convaid Cruiser is used to transport home." The IEP "Parental Concerns for Enhancing the Student's Education" section states that the Student requires an emergency wheelchair to be permanently stored on the school bus the Student is assigned to during transportation to and from school." IEP "Conference Notes" reflect that "[a]t this time, the IEP team does not deem an emergency wheelchair necessary to access his education." The IEP provides for special education transportation for the Student which can accommodate a secure wheelchair. The need for a second, emergency wheelchair to be stored on the bus was rejected by the IEP team. (IEP dated September 30, 2015.)

7.      The Student's IEP dated September 30, 2014 had been implemented at the time Parent filed her initial DPCN on November 21, 2014.

8.      Parent concedes that the operative placement for the purpose of stay put is the Student's IEP dated September 30, 2014. (Parent's DPCN dated February 24, 2015.)

9.      Parent concedes that the IEP team, in the September 30, 2014 IEP, did not incorporate two wheelchairs for the Student's into the Student's transportation plan. (Parent's DPCN dated February 24, 2015.)

10.     The Settlement Checklist/Term Sheet for Federal Court Case No. 14 CV 2666 is dated January 14, 2015, signed by counsel for both parties, and states that it is a "binding agreement today." The Settlement Checklist/Term Sheet further provides as follows: "Plaintiff is specifically aware that this agreement includes a release of the current due process claim pending, Case No. 2015-0149, filed with ISBE." (Settlement Checklist/Term Sheet dated January 14, 2015.)

11.     On February 16, 2015, the Parent advised this Hearing Officer that she was withdrawing her DPCN dated November 21, 2014 as the issues raised had been settled as part of the federal court settlement in Case No. 14 CV 2666. This hearing officer has made three attempts to hold a status conference with the parties to discuss the Parent's request. However, both parties were unavailable to participate. The Parent confirmed her request to withdraw her Due Process Complaint Notice to this hearing officer via email on three separate occasions. Based upon Parent's representations, this Hearing Officer finds that the Parent voluntarily withdrew her DPCN. (Order of Withdrawal dated February 20, 2015.)

12.     The Report and Recommendation Order of Magistrate Judge Maria Valdez entered April 7, 2015 recommended that the Settlement Checklist/Term Sheet be enforced as written on January 14, 2014 and that the agreement was effective as of that date. (Report and Recommendation Order of Magistrate Judge Maria Valdez entered April 7, 2015.)

13.     The Minute Order of Hon. Amy J. St. Eve, United States District Court of the Northern District of Illinois, dated April 22, 2015 adopted Judge Valdez's April 7, 2015 Report and Recommendation. It provided that the settlement agreement in federal case no. 14 CV 2666 shall be enforced as stated in Judge Valdez's Report and Recommendation. The case was dismissed without prejudice until June 30, 2015, after which dismissal will become with prejudice without further order of the court. (Minute Order of Hon. Amy J. St. Eve dated April 22, 2015.)

7

14.     Parent is unrepresented by counsel in this matter.

15.     Parent is represented by counsel in the concurrent, related federal court matter under Case

No. 14 CV 2666.  (Settlement Checklist/Term Sheet in federal case no. 14 CV 2666 dated January

14, 2015.)


## CONCLUSIONS OF LAW

**Motion for Summary Judgment**:

        The Illinois Code of Civil Procedure allows for summary judgment without a hearing when

the pleadings, together with the affidavits show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005.

While the Code of Civil Procedure applies only to matters in the civil division of the court system

and not this proceeding, hearing officers, pursuant to 23 Ill. Admin. Code 226.660, have the power

to render decisions and issue orders.  Therefore, this Hearing Officer has the power to render a

decision on a motion for summary judgment and by way of analogy will use and apply the

standards in 735 ILCS 5/2-1005.

        The District's DPCN was filed in response to Parent's request for an Independent Vision

Itinerant Educational Evaluation based upon her disagreement with the Vision Itinerant Report

dated September 29, 2014.  A parent has a right to an independent educational evaluation (IEE) at

public expense if the parent disagrees with an evaluation obtained by the public agency.  34 CFR

300.502(b)(1); *Krista P. v. Manhattann School Dist.*, 255 F. Supp. 2d 873, 889 (N.D. Ill. 2003).

District counsel argues that the Annual Vision Itinerant Report dated September 29, 2014 does not

constitute an evaluation pursuant to IDEA, the objection to which would give rise to Parent's right

to request an IEE at District expense.

8

Pursuant to IDEA, evaluations must consist of procedures to (1) determine if the child is a child with a disability under 34 CFR 300.8 and (2) determine the educational needs of the child. 34 CFR 300.301. IDEA sets out in 34 CFR 300.304 and 34 CFR 300.305 the criteria required for evaluations and reevaluations which Districts must follow. In performing an evaluation, the District must use: (1) A variety of assessment tools and strategies to gather relevant information about the Student; (2) Not use any single measure or assessment as the sole criterion for determining whether the child is a child with a disability and for determining an appropriate educational program for the child; (3) Technically sound instruments. Assessments and evaluation materials must meet specific selection criteria, must be tailored to assess specific areas of educational need, must be selected and administered so as to ensure that the results accurately reflect the factors they seek to measure. Further, Districts must ensure that the Student is assessed in all areas related to the suspected disability. Evaluations must be sufficiently comprehensive to identify all of the Student's special education and related service needs whether or not linked to the disability category and must provide relevant information to directly assist in determining that the educational needs of the Student are provided. 34 CFR 300.304. Reevaluations must consider classroom based observations and State assessment data, among other factors. 34 CFR 300.305. The screening of a Student by a teacher or specialist to determine appropriate instructional strategies for curriculum implementation shall not be considered to be an evaluation for eligibility for special education and related services. 34 CFR 300.302.

The Vision Itinerant Report is a one and one-half page document which contains three sections of information. The first paragraph of the report is a discussion of the Student's visual diagnosis made by a physician who assessed the Student. The second paragraph discusses strategies used by the vision itinerant teachers during the current school year as compared with

9

those used during the prior school year and further provides information on the Student's present levels of performance in September 2014. The third paragraph is a list of eleven (11) suggestions for appropriate instructional strategies for the implementation of the curriculum for the Student. (FF #1). The report does not purport to: determine eligibility of the Student for special education and related services; determine the educational needs of the Student; use a variety of assessment tools and strategies; evaluate the Student in all areas of suspected disability; be sufficiently comprehensive to identify all of the Student's special education and related service needs. Further, it does not consider classroom based observations or State assessment data. (FF #2). Based upon the evidence presented, the Vision Itinerant Report is not an "evaluation" as it does not meet the criteria established under IDEA pursuant to 34 CFR 300.301, 300.302, 300.304 and 34 CFR 300.305.

The District further contends that the VIT is not an evaluator as evidenced by the Illinois Administrative Code, which classifies a vision itinerant as a qualified special education worker, but does not include a vision itinerant as a class of persons able to complete evaluations. 23 Ill. Admin. Code 226.840 and 226.850. Pursuant to the VIT's affidavit, he is licensed in Illinois as a professional educator, holds an endorsement in teaching blind and visually impaired students, and holds a Master's Degree in Orientation and Mobility. (FF #3). A vision itinerant is not listed in the Illinois Administrative Code 226.850 as among the class of persons able to complete special education evaluations. Ill. Admin. Code 226.850. Therefore, VIT is not a qualified evaluator.

This Hearing Officer has carefully considered all of the evidence presented and arguments advanced by both parties. The evidence presented establishes the report as a screening of the Student by a teacher and vision specialist to determine appropriate instructional strategies for curriculum implementations. (FF #4). Pursuant to 34 CFR 300.302, this screening shall not be

considered an evaluation for eligibility for special education and related services. This Hearing Officer concludes that the Vision Itinerant Report falls squarely outside the provisions of 34 CFR 300.301 and is not an evaluation. Further, a vision itinerant is not among the class of persons qualified as an evaluator pursuant to section 226.850 of the Illinois Administrative Code. While it is an uncontested fact that the Parent disagrees with the Vision Itinerant Report (FF #5)[6], the report does not constitute an evaluation which would trigger the right to an IEE pursuant to 34 CFR 300.502(b)(1) and *Krista P. v. Manhattan School Dist.* 255 F. Supp. 2d 873, 889 (N.D. Ill. 2003).

The District also contends that the Parent's request for an IEE is barred by the federal court Settlement Term Sheet/Checklist signed by the parties on January 14, 2015 as the Parent, in her original DPCN dated November 21, 2014, alleged that the vision itinerant services did not meet the Student's needs.[7] As this Hearing Officer has determined that the vision itinerant report does not constitute an evaluation which would give rise to the Parent's right to request an IEE at District expense, there is no need to address this claim.

The District's Motion for Summary Judgment with respect to its DPCN in response to Parent's request for an Independent Vision Itinerant Educational Evaluation is granted.

**Motion to Dismiss:**

The District has filed a Motion to Dismiss Parent's DPCN and for Fees Against Parent. As part of its Motion to Dismiss, the District requests that this Hearing Officer dismiss the Parent's DPCNs filed on February 24th and February 25th, 2015 because the issues raised are the same as

---

[6] In her Response to the District's Motion for Summary Judgment, Parent provides two Verification by Certification pages signed by two separate individuals who accompanied her to District meetings to substantiate her position that she disagrees with the Vision Itinerant Report. However, Parent's disagreement with the report is not the determinative issue. The issue is whether the report constitutes an evaluation pursuant to IDEA

[7] The Settlement Term Sheet/Checklist signed by both parties on January 14, 2015 provides as follows: "Plaintiff is specifically aware that this agreement includes a release of the current due process claim pending, Case No. 2015-0149 filed with the ISBE." (FF #10.)

those resolved pursuant to the Settlement Checklist/Term Sheet in the federal court matter. In addition, the District contends that the issues raised in those DPCNs are the same issues which were raised in Parent's initial November 21, 2014 DPCN which was subsequently voluntarily withdrawn by the Parent after the settlement was signed in the federal matter.

The District is mistaken in its belief that two Parent DPCNs are before this Hearing Officer. Pursuant to this Hearing Officer's Status Call Order dated March 27, 2015, the only Parent DPCN currently pending before this Hearing Officer is the Parent's DPCN dated February 24th.[8] Upon careful review and consideration, the only issue raised in the DPCN is whether the stay put placement, from the operative IEP of September 30, 2015, was violated when the District changed the Student's special education transportation arrangements to a bus that would not allow for the storage of two (2) wheelchairs for the Student.

Pursuant to 34 CFR 300.518, "during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under 34 CFR 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." Current placement refers to the operative placement actually functioning at the time the dispute first arises. If an IEP has been implemented at the time the complaint is filed, then that is the stay put placement. *Thomas v. Cincinnati Bd of Ed*, 17 IDELR 113 (6th Cir 1990).

The Student's Transportation Plan dated September 30, 2014 provides that the Student "requires a secured wheelchair." The comments to that section state "uses wheelchair unless

---

[8] Parent subsequently filed two proposed Amended DPCNs on February 26th and March 3rd. Pursuant to this Hearing Officer's Status Call Order of March 27, 2015, it was found that the Parent's Amended DPCNs were nothing more than the Parent's attempt to resurrect issues previously withdrawn, and which the Parent stated were settled as part of the federal court settlement agreement. Based upon that finding, Parent's request to amend her DPCN via proposed amendment documents filed on February 26th and March 3rd was denied.

parent brings to school, then Convaid Cruiser is used to transport home." The IEP "Parental Concerns for Enhancing the Student's Education" section states that the Student requires an emergency wheelchair to be permanently stored on the school bus the Student is assigned to during transportation to and from school." However, the IEP "Conference Notes" reflect that "[a]t this time, the IEP team does not deem an emergency wheelchair necessary to access his education." (FF #6.) The operative IEP provides for special education transportation for the Student which can accommodate a secure wheelchair. The need for a second, emergency wheelchair to be stored on the bus was rejected by the IEP team. Parent concedes these facts in her DPCN. (FF #6-8.) Therefore, after careful consideration of the evidence presented, this Hearing Officer concludes that the District did not violate the stay put placement when it made changes to the Student's transportation arrangements and provided a bus which only had the capacity for one wheelchair.[9]

As the only issue presented is whether a violation of the stay put placement occurred, and this Hearing Officer has concluded that the District did not violate the Student's stay put placement, the District's Motion to Dismiss is hereby granted.

**Sanctions:**

The District contends that it is entitled to sanctions against Parent in the form of recovery of its attorney's fees for litigating Parent's IEE request and continuing to defend the litigation when Parent filed subsequent DPCNs after the federal case was settled and her initial DPCN was withdrawn. IDEA provides for attorney fee recovery by Districts when: the DPCN was frivolous, unreasonable or baseless; and if the parent acted with improper purpose, such as to harass the

---

[9] As part of the requested relief in Parent's DPCN dated February 24, 2015, Parent requests that the Hearing Officer grant educational evaluations of the Student's mobility assistive technology equipment, including Student's primary and secondary wheelchairs and pediatric walker. However, in Parent's original November 21, 2014, DPCN, Parent concedes that in March 2014, the District had granted her request for Assistive Technology and Orientation & Mobility Assessments. (See Parent's DPCN filed November 21, 2014). This Hearing Officer does not believe that these issues are properly before her. However, if they were, this Hearing Officer concludes that these issues were resolved when the District granted her the relief she requested. (See Parent's DPCN filed November 21, 2014.)

district or increase litigation costs. *I.S. v. School Town of Munster*, 58 IDELR 186 (N.D. Ind. 2012). While this Hearing Officer recognizes that IDEA provides that only courts, not impartial hearing officers, have the authority to grant these fees as fees, here the request is framed as a sanction. In support of its position, the District points to the Parent's request for an Independent Vision Itinerant Educational Evaluation after agreeing to settle the lawsuit in the federal case and agreeing to release all claims related to her DPCN which sought, as a remedy, one on one vision itinerant services. The District also points to Parent's repeated DPCN filings in which the same issues as those previously settled in federal court and withdrawn in this administrative forum were raised again and again. The District also contends that the Parent acted in bad faith by continuing to litigate in this administrative forum those claims settled in the federal court thereby harassing the District. District further contends that Parent's request was frivolous, unreasonable and was done for an improper purpose.

Parent is unrepresented by counsel in this matter. (FF #14). In addition, District has failed to present evidence beyond the allegations above to show that Parent's claim was baseless and that she acted with an improper purpose to harass the District or increase litigation costs. While Parent's actions have been misguided, Parent is not an attorney and is attempting to represent herself to the best of her ability. Presumably, her actions are based upon her desire to obtain the best educational result for her Student and, as a non-attorney, she may not fully comprehend the implications of her actions.[10] Based upon the District's lack of evidence to support its position,

---

[10] This HO is troubled by the way in which the Parent participated and conducted herself during this process. This HO issued multiple admonishments to Parent regarding her attitude and conduct during the course of these proceedings. While this HO is aware of the daunting task which confronts a Parent representing herself, this HO would suggest that the Parent, with the assistance of an attorney or advocate, reflect on how she conducted herself during the course of these proceedings and the potential adverse consequences such can have for her. Parent must understand that with the right to participate in this hearing process, comes serious responsibilities e.g., having a good faith basis for requests, motions, and representations made to a hearing officer, reasonably cooperating with the hearing officer in effectively managing the process, conducting herself in a cordial and professional manner with the hearing officer and opposing parties. Notwithstanding the best efforts of this Hearing Officer, without question, this

14

this Hearing Officer concludes that sanctions against Parent, in the form of an award to District of its attorney fees, is not appropriate. The District's request for sanctions in the form of recovery of its attorney's fees is denied.[11]

## **ORDER**

Based upon the above Findings of Fact and Conclusions of Law, the Hearing Officer's Order is as follows:

1. The District's DPCN filed February 16, 2015 and Parent's DPCN filed February 24, 2015 are hereby consolidated under ISBE case number 2015-0149.

2. The District's Motion for Summary Judgment with respect to its DPCN is hereby granted in part, and denied in part. The Motion for Summary Judgment is granted, the request for Sanctions, in the form of recovery of the District's attorney's fees, against Parent is denied.

3. The District's Motion to Dismiss with respect to Parent's DPCN is hereby granted in part and denied in part. The District's Motion to Dismiss Parent's DPCN is granted, the District's request for fees is denied.

4. The District's Joint [two District counsel] Motion for Leave to File a Joint [two District counsel] Reply Brief is hereby denied.[12]

---

matter was unreasonably prolonged by Parent's attitude, conduct, and actions. Such delays are not in the best interest of Parent's son, as they further inflate the cost of what is already an expensive process and therefore diminish scarce resources. This said, Parent should not shy away from advocating for her son, including pursuing a due process proceeding, if necessary. These comments are solely intended to suggest that before she again pursues a hearing, she carefully determine with professional assistance the appropriate way to proceed both legally and personally.

[11] To the extent that the District is requesting recovery of its attorney's fees as fees in its Motion to Dismiss, IDEA provides that only courts, not impartial hearing officers, have the authority to award attorney's fees as fees. Therefore, this Hearing Officer does not have jurisdiction to award attorney's fees.

[12] In her Response to the District's Motion to Dismiss Parent's DPCN and for Fees Against Parent, Parent raises, for the first time, issues with the qualifications of certain members of her Student's IEP team. In addition, she alleges that the District materially misrepresented the qualifications of these individuals in order to induce Parent to withdraw her original November 21, 2014 DPCN. The issue of the qualifications of certain members of the Student's IEP team is not properly before this Hearing Officer at this time. In addition, this Hearing Officer does not have jurisdiction to adjudicate claims of fraud and misrepresentation. Therefore, the Hearing Officer has denied both District's and Parent's requests to file additional Motions regarding these issues.

5.     Parent's Request for Leave to Amend Parent's Motion in Opposition to District's Motion to Dismiss and for Fees Against Parent is hereby denied.[13]

## NOTICE OF RIGHT TO REQUEST CLARIFICATION

Pursuant to 105 ILSC 5/14-8.02a(h) either party may request clarification of this decision by submitting a written request to the Hearing Officer within five (5) days of receipt of the decision. The request for clarification shall specify the portions of the decision for which clarification is sought. A copy of the request shall be mailed to all other parties and the Illinois State Board of Education, Program Compliance Division, 100 North First Street, Springfield, IL 62777. The right to request clarification does not permit a party to request reconsideration of the decision itself and the Hearing Officer is not authorized to entertain a request for reconsideration.

## NOTICE OF RIGHT TO APPEAL

This is the final administrative decision in this matter. Pursuant to 105 ILCS 5/14-8.02a(i), any party aggrieved by this Hearing Officer Determination may bring a civil action in any state court of competent jurisdiction or in a District Court of the United States without regard to the amount in controversy within one hundred and twenty (120) days from the date the decision is mailed to the party.

Dated: June 2, 2015                   _____
                                      Janet K. Maxwell-Wickett,
                                      Impartial Hearing Officer
                                      1600 Golf Road, Corporate Center, Suite 1200
                                      Rolling Meadows, IL  60008
                                      Phone:  (847) 430-3789
                                      Fax:  (847) 305-5897
                                      Email: janet@maxwellwickettlaw.com

---

[13] This request by Parent is her response to the District's Joint Motion for Leave to File a Joint Reply Brief to address the issues in footnote 9 above. Parent seeks to respond to the District's position with respect to claims regarding qualifications of certain members of the Student's IEP team, which are not properly before this Hearing Officer, and claims of fraud and misrepresentation, which this Hearing Officer does not have jurisdiction to adjudicate. Therefore, this Hearing Officer has denied the request.

16

## SETTLEMENT CHECKLIST/TERM SHEET

CASE NAME: _KJ_ vs. _Gunnell + Whalen_

CASE NO. _14_ CV _2666_ DATE: _1/14/15_

The Parties have participated in a settlement conference and have agreed on the following material terms of settlement:

$ _7,000_ (which is inclusive of the cost towards a wheelchair)

A.   **PAYMENT OF MONEY**

1. To: _____ From: _____

2. Total amount to be paid: $ _7,000_ ~~(inclusive of the cost of the wheelchair)~~

3. When: _Within 30 days of executed settlement the cost of the wheelchair_

4. **Payment terms** (*e.g., to whom checks will be written, number of payments, payment schedule, etc.*):
_Leatrice Gates and/or KJ._

5. **Does payment include attorney's fees?** (Yes) or No

6. **Any third party liens to be paid from proceeds?** Yes or (No)

   a. If yes, to whom: _____

7. **Tax Treatment** (*e.g., W-2, 1099*): _1099 to be issued_

B.   **SELECT A RELEASE OPTION** (*relinquishment of a right*)

   (a. One Way From Plaintiff(s) to Defendant(s)), or b. Mutual  (Circle one)

**Scope of Release :**

a. General Release
   1. All claims raised in the litigation, or
   (2. All existing claims, whether or not raised in the litigation.)

**OR**

b. Limited Release:
Scope: _____

**DEFENDANT'S EXHIBIT**
_4_

C.   CONFIDENTIALITY

    1. Settlement agreement to be confidential: Yes or No

    2. Mutual: Yes or No

    3. What can be said about litigation?

        a.   Dispute amicably resolved, or
        b.   Other:_____

    4. Exceptions to confidentiality?

        a.   Attorneys
        b.   Tax advisors
        c.   Immediate family
        d.   As otherwise required by law
        e.   Other:_____

D.   OTHER MATERIAL TERMS (if discussed at settlement conference):

a. π is specifically aware that this agreement includes a release of the current due process claim pending, Case No. 2015-0149 filed with the ISEE.

b. Further π is aware that the release would not act as a bar if it is based on ~~ISEE~~ facts arising after the date of execution of settlement agreement.   the claim

2

**E.    EFFECTIVE DATE**

1. **A binding agreement today** *(this will occur in the vast majority of cases)*; **Yes or No**

2. **OR No binding agreement until the typed settlement agreement is signed.**
*(Only select in instances where parties need to obtain further approval given the structure of the company or municipality, i.e. Board approval is required or if an Age Discrimination Claim is asserted and the Plaintiff is of the requisite age).*

**PARTIES REPRESENT THAT THEY HAVE FULL AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT AND AGREE THAT THE ABOVE REPRESENTS THE MATERIAL TERMS OF SETTLEMENT.**

**Signatures of all parties or party representatives:**

On Behalf of the Plaintiff

_____ on behalf of AERC/ Dr. Connell
On behalf of the Defendant

_____ on behalf of Defendant Dr. Whelan

STEPHEN ROTTER    ON BEHALF OF DEF Cook-IL + MS. Lippert

3